Tozer et al. v. Hershey.

DAVID TOZER et al.

*vs.*

BENJAMIN HERSHEY, Impleaded, &c.

Where the question litigated on the trial is the partnership of the defendants and a sale of logs to them as such, a question put to one of the plaintiffs, as a witness, tending to prove a fact which, if true, would not under the particular circumstances of the case be inconsistent with the plaintiffs' present claim, that the defendants were partners and that the sale was made to them as such, was properly excluded.

Where an objection is made to evidence, and no ground of objection whatever is stated, the objection is properly overruled.

Where an admission of partnership is voluntary, direct, plenary, and explicit, made by a party to the record, the defendant sought to be charged as a partner, an intelligent man, extensively engaged in business, under circumstances which would not only repel a false statement of this character, but would tend strongly to impress silence as to the

fact, if true, and such admission is made on two separate occasions, each being established by a different witness, and the testimony being uncontradicted, and "unchallenged as to verity," it was not error for the court to refuse to charge as requested by defendant that "admissions are the lowest class of proof, and should be received and considered by the jury with great caution;" but to charge instead thereof, "with respect to verbal admissions, they ought to be received with great caution."

There is no substantial difference between the provision in the statutes prior to 1866, that a new trial might be granted for "insufficiency of the evidence to justify the verdict, or other decision, or that it is against law," and the present statute which prescribes as one ground upon which a new trial may be granted: "That the verdict, report, or decision is not justified by the evidence, or is contrary to law."

The sufficiency of the evidence to justify the verdict considered and determined.

This action was brought in the district court for Washington county, by Tozer & Schow as plaintiffs and partners, to recover for certain logs alleged to have been sold to the defendants Cover & Hershey as partners. The defendant Hershey answered, denying all the allegations of the complaint, except the allegation of the partnership of the plaintiffs. Upon the trial of the action, the principal issue was the existence of a partnership between the defendants David Cover and Benjamin Hershey. The jury rendered a verdict for the whole amount claimed. The case is brought to this court upon an appeal from an order made *pro forma*, by consent, denying a motion in behalf of the defendant, Benjamin Hershey, for a new trial.

The defendant claims in this court, that the order denying the motion for a new trial should be reversed, and a new trial granted, on the ground that "the verdict is against evidence and the weight of evidence;" and also for errors committed in the admission of evidence, and the refusal of the court to charge as requested by the defendant, to which exceptions were duly taken. The opinion of the court states

Tozer et al. v. Hershey.

the evidence introduced in the trial, and the exceptions of the defendant, sufficiently for a full understanding of the case.

BRISBIN & PALMER and WM. M. McCLUER for Appellant.

A. B. STICKNEY and SMITH & GILMAN for Respondents.

I.—The case shows the preponderance of testimony in favor of the plaintiffs.

II.—The jury are the judges of the facts and credibility of witnesses, and the verdict will not be disturbed if there is any evidence to support it. *Johnson vs. Winona & St. Peter R. R. Co.*, 11 *Minn.* 296. *Mead vs. Constans*, 5 *Minn.* 177.

III.—No error was committed by the court in the matters excepted to by the appellant.

IV.—The admissions proved in this case, were deliberately made, and furnish strong and very satisfactory evidence as to the partnership—such admissions are not the "very weakest" of evidence. 1 *Greenleaf, Evid.*, sec. 200.

V.—The admission of immaterial evidence, if it work no harm, furnishes no ground for a new trial. *Illingworth vs. Greenleaf*, 11 *Minn.* 235.

*By the Court*—McMILLAN, J.—The plaintiffs bring this action to recover the price of certain logs alleged to have been sold to the defendants.

Hershey denies each and every allegation of the complaint, excepting the averment of copartnership between the plaintiffs.

The only question litigated upon the trial was the existence of a partnership between the defendants. It was not denied by Hershey that the plaintiffs sold and delivered the logs sued for to Cover; nor did the plaintiffs claim that the

defendants held themselves out as partners, or that they supposed at the time of the sale of the logs that they were in partnership, but admitted that at the time of the sale they supposed they were dealing with Cover individually.

The cause was tried by the court and jury, and resulted in a verdict for the plaintiffs of $10,000. A case was settled by the parties, and it was stipulated between them that an order should be made *pro forma*, denying the motion of defendant Hershey for a new trial, and from the order made in accordance with the stipulation the defendant appeals.

In considering the points urged in support of the appeal, we shall pursue a different order from that followed by the counsel in presenting the case; considering first the exceptions taken by the defendant to the rulings of the court on the trial. On the re-cross-examination of David Tozer, one of the plaintiffs, referring to the claim which is the subject of this action, the defendant's counsel asked this question: "Have you not presented this claim to the assignee of Cover in bankruptcy for adjustment?" which was objected to as immaterial; the objection was sustained and defendant excepted. The plaintiffs, as we have remarked, admit that at the time of this sale they supposed they were dealing with Cover individually, and that they did not know or suppose that Hershey was in partnership with him at the time, and it was not proposed to prove that the presentation of the claim was made after knowledge of the partnership.

Under this state of affairs there would be nothing inconsistent with their present claim, in the fact of presenting their account to Cover's assignee in bankruptcy, for adjustment. Under a different state of facts we can well see that the question would become material. We think no injury was done to the defendant by the exclusion of the testimony sought to be elicted. Certain papers were identified by

Isaac Staples as being in the handwriting of Cover, and as having come into his possession, with other papers of Cover's, as his assignee in bankruptcy, among others the papers marked exhibits "B" and "C," and which Cover when called as a witness for plaintiffs also identified as in his handwriting, stating also that he received them from Muscatine, Iowa, and that he sent duplicates of the exhibits "B" and "C" to Mr. Hershey, the defendant, who it had previously been shown resided in Muscatine. These exhibits as presented in the paper book are one paper, and contain a list of names with various amounts in figures in a column opposite, and at the bottom, the words "Duplicate sent B. Hershey, Muscatine, Iowa, March 26th, 1867."

The plaintiffs offered the exhibit marked B and C in evidence, which was objected to by defendant, and the objection overruled and defendant excepted. We do not discover any material influence on the case one way or another from this evidence, but however that may be, no ground of objection to its reception was stated. The exception therefore must be overruled.

The parties respectively having rested, the counsel for the defendant Hershey submitted to the court in writing some propositions of law, with a request that they be given in charge to the jury, all of which were given but the sixth, which is in the following language:

"*Sixth.* Admissions are the lowest class of proof, and should be received and considered by the jury with great caution." This instruction the court refused, but substituted the following: "With respect to verbal admissions, they ought to be received with great caution." To this refusal of the court to charge, and the substitution of the above matter, the defendant's counsel excepted.

In support of this exception the defendant says: "We

were either entitled to the charge as requested or not. It was law or was not." If the proposition embraced in the request was not applicable to the admissions in the case at bar, it was to that extent a mere abstract question, and although strictly correct it would not be error to refuse it. The term "admissions" embraces various classes of testi-mony, some of which are of the most solemn and conclusive character, others are less solemn in their nature, and have only the effect of *prima facie* or presumptive evidence. Mr. Starkie in treating on this subject says, "Evidence of this class declines by gradual shades from the most express and solemn admissions, down to expressions and acts which afford but remote and weak presumptions as to the particular fact in question." 2 *Stark. Ev. p.* 26.

With respect to all *verbal admissions*, says Mr. Greenleaf, "it may be observed that they ought to be received with great caution. * * But where the admission is deliber-ately made, and precisely identified, the evidence it affords is often of the most satisfactory nature." 1 *Gr. Ev.* § 200. And it has been said by high authority, even in a criminal case, "That evidence of confessions is to be received with great caution, yet when made and satisfactorily proved, they are the best species of evidence, better than the direct testimony of one who should testify that he saw the accused set a lighted torch to the building. In the latter case doubts may arise as to the identity of the person, or the intention with which he did the act, or of the veracity of the witness, but in the case of a voluntary confession by one of sufficient intelligence to know the nature and consequences of his crime, no such doubt can exist." *Com. vs. Knapp, Putnam p.* 507. While on the other hand, "where the admission con-sists in a loose and careless declaration, if it be evidence at all, it is of little weight." 2 *Stark. Ev.* 23. It is true that

Tozer et. al. v. Hershey.

in *Thomas vs. Thomas*, (cited as *Gilman vs. Morgan*, in the defendant's brief,) 2 *J. J. Marshall*, 65, the judge delivering the opinion uses language substantially like that in the request submitted in this case; but it will be seen that the declarations in that instance were excluded as hearsay, and were not that of the party to the record, and the offer was of a very general character. In the case at bar the fact admitted is, the existence of a partnership; the admission is voluntary, direct, plenary, and explicit, made by a party to the record, an intelligent man, extensively engaged in business, under circumstances which would not only repel a false statement of this character, but would tend strongly to impress silence as to the fact, if true. The admissions were made on two separate occasions, each being established by a different witness; and the testimony by which they are established, "is (to use the language of the defendant's counsel,) unchallenged as to verity." Mistake would seem to be beyond probability. If not true, the admission must have been willfully false. It would be difficult, if it is not impossible to conceive of an extra judicial verbal admission entitled to greater weight, than the one here presented.

We can conceive a state of facts under which even the positive testimony of a person making such admission would not be sufficient to overcome it. While, therefore, the law, from the nature of the proof, enjoins great caution upon juries in receiving the evidence of admissions as true, and in determining the weight to be given to the admission if true, we know of no rule which places admissions of this character, as the lowest class of proof. If there are admissions which are of this class, it is not from any inherent defect in their nature as admissions that they become so, but by reason of extraneous circumstances which qualify them. The exception, therefore, cannot be sustained.

This brings us to the consideration of the only remaining question in the case, which is the first point urged in the argument of the appellant's counsel, that "the verdict is against evidence and the weight of evidence." This position was pressed with much earnestness, and supported with great ability by the defendant's counsel, both at bar, and in a written argument submitted to the court.

The prefatory remark of the counsel·in his argument is right, that no weight attaches to the fact that the court below denied the motion for a new trial, since the order was made *pro forma*, and in pursuance of the stipulation of the parties.

The statute prior to 1866, regulating the subject of new trials provided, among other grounds, that a new trial might be granted for "insufficiency of the evidence to justify the verdict or other decision, or that it is against law." *Rev. Stat.*, *ch.* 71, *sec.* 58, *subdiv.* 5. *Comp. Stat. ch.* 61, *sec.* 59, *subdiv.* 5, *p.* 564. The present statute prescribes as one ground upon which a new trial may be granted, "that the verdict, report or decision is not justified by the evidence, or is contrary to law." *Gen. Stat.*, (1866,) *ch.* 66, *sec.* 235, *subdiv.* 5, *p.* 483. We see no substantial difference between these provisions of statute. If testimony is insufficient to justify a verdict, then the verdict is not justified by the evidence; and if the verdict is not justified by the evidence, it is because the evidence is insufficient to justify it. The difference in the statutes is one of phraseology merely.

The principal testimony relied on by the plaintiffs to prove the partnership of defendant Hershey with Cover, was the admissions of Hershey, as stated by the witnesses Scheffer and Ludden. We have already referred in general terms to this testimony. There can be no doubt that Hershey's admissions were competent evidence to prove that he was a

Tozer et al. v. Hershey.

partner. *Grafton Bank vs. Moore*, 14 *N. H.*, 145. *Whitney vs. Ferris*, 10 *Johns.* 66. *Taylor & Fitzsimmons vs. Henderson*, 17 *S. & R.*, 457. An examination of such evidence shows that the partnership as to Hershey could not well be proved more certainly by testimony of admissions, than is here done.

The only testimony introduced by the defendant is that of Mr. Cover. After some preliminary statements made by the witness, he stated that he had business relations with Hershey since 1864, and continued to have up to 1868.

The plaintiff here asked the witness, "Did you not make and sign a written agreement with Hershey, showing what your relations with him were?" and proposed to show by the witness that he signed a paper in connection with Hershey, embracing the terms and conditions on which the business of the firm was transacted in 1867, specifying the nature of the business, the manner in which the profits were to be divided between them, which agreement was signed by witness and Hershey; which was objected to as immaterial at this stage of the examination. The witness, under the objection and exception of the plaintiffs' counsel proceeded to state his relations with Hershey. He commenced to supply Hershey with logs in 1865, at certain prices at his mill, and in the fall settled with him.

In the spring of 1866, the understanding was that Cover was to supply Hershey with logs, for the whole season, at the cost price of logs there, (Muscatine.) Cover was to have the privilege of drawing on Hershey to the amount of $50,000 or $60,000, and was to deliver him the logs at cost for the use of the money. The witness also states that in the spring of 1866, he bought logs for Hershey, of W. H. C. Folsom, for which Hershey advanced the money, but not getting the logs out as soon as was expected, other logs

were turned over to Hershey, and the Folsom logs were sold and the profits divided between witness and Hershey. The witness also identifies and explains the entries of Aug. 16, 1866, in exhibit "H," and December 28, 1867, in exhibit "G," one-half profits on Folsom logs as referring to this transaction. The witness also states that exhibit "D," is an account of logs bought by himself, and Mr. Overstoltz, of St. Louis, and has no reference whatever to Mr. Hershey. He also says that during 1866, Hershey and himself had no other transactions than those stated; at the end of the year made a settlement with Hershey at Muscatine, and the latter was in witness' debt.

Afterwards in January, 1867, made arrangements for future business transactions with Hershey. "Hershey proposed to take an interest with me in the Beaver Brook business which Greely and I were running; I was to give him one-fourth interest, and he was to furnish money, without interest, to pay off the men in the spring; there were three marks of logs in those operations; the arrangement was partly prosecuted according to agreement; we got out the logs, drove and sold them, and in the spring bought out Greely's interest; the arrangement was continued through 1867, and 1868; we never had any settlement with reference to the business; the extent of this transaction was about ten million feet of logs; at this time we had no new arrangement whereby I was to furnish Hershey with logs; this was continued the same as before; I supplied him and he advanced money; this money was procured by drafts drawn by me on Hershey; he sold no other logs for me during this time, that I recollect; I did not send him any except those supplied at cost; I dealt with other parties largely in logging business; I had a partial settlement with him in 1867; it was at Muscatine; we agreed on the price of logs, but

did not have a final settlement, and never have had one since; this partial settlement was in October or November, 1867. The same arrangement was continued after 1867 ; Hershey and I never had any business on joint account, except as to the Folsom logs and the Beaver Brook logs, *that I recollect ;* we never had any arrangement for a general partnership; I did not pay him any interest on money advanced, except in the manner spoken of; *I do not recollect of dividing profits and losses in any other manner ;* I never had any partnership with any body under the firm name of David Cover, except with Simpson ; *I never had* with Hershey." Yet on his cross-examination he said, " in conducting the business with Folsom we used the firm name of David Cover; also in the Beaver Brook operation we used the same firm name ; the Overstoltz partnership was carried on in the name of David Cover." The witness Cover on his cross-examination further said, " My arrangement with Hershey was a verbal one; we did not reduce it to writing." Paper marked "A" (in paper book) shown to witness, who testifies, " this was made in the fall of 1867 at Chicago, Ill.; Hershey and I were there; we talked over business matters; he had a memorandum of the same kind with my name signed to it; I reduced this to writing, and another of similar import signed by me which I delivered to Hershey ; Hershey took the paper signed by me and said he would let me know whether or not he accepted it; he did not let me know ; I made the proposition to him. Plaintiff asked the witness to read the paper, which was objected to by the defendant, objection sustained." The witness proceeded, " I proposed to Hershey to go into a regular partnership in the lumbering business, in buying and selling logs, supplying loggers, &c. ; he to furnish one-half of the money, and I the other half, and share the profits equally

between us; he wanted me to put it down in writing, and I did so; he never returned the writing to me; I left the paper with him; he did go on and furnish money for the logging business; I made an arrangement with him to furnish money for 1868; this was in November or December, 1867, and was to embrace the business of 1867, and 1868; I next saw Hershey in the spring of 1868 at Stillwater; had no conversation with him in relation to the proposition I made to him about partnership; Hershey furnished me thirty or forty thousand dollars more in 1868 than he did the year before; I made an arrangement with him at Chicago to furnish me more money than heretofore; I was to draw on him, and send him logs to pay for the same; the arrangement then made contemplated an advance of an additional amount of money above what he had before furnished; I was at liberty to draw on him for an additional amount; I was to allow him interest on this amount; no rate was fixed; that interest was not an interest in the business; I was to allow him the same rate he had to pay on money; Hershey was not to sell logs for me; after completing this arrangement, I made a proposition for a partnership; * * * advances of Hershey were drawn for sixty and ninety days; I paid the discount myself." On his re-direct examination the witness said, "Hershey did not sign the contract spoken of at Chicago; I acted upon what was agreed between us at Chicago."

The testimony of Mr. Cover tends certainly to disprove the fact of a partnership. The jury are the judges of the facts, and it is for them to determine the credibility and weight of the testimony before them. We find that during 1867, and 1868, a partnership did exist between these parties as to the Folsom logs, and as to the Beaver Brook business, the business of which was conducted in the individual

Tozer et al. v. Hershey.

name of Cover, and we must infer that the partnership was only known to those engaged in it.

We find also a statement of a proposition by Mr. Cover to Hershey for a general partnership, which is reduced to writing and signed by Cover, and delivered to Hershey, who receives and retains it, the business transactions between them still going on. Mr. Cover says Hershey said he would let him know whether he accepted it or not, and never did let him know. We find Hershey handing to Scheffer a paper signed by Cover, stating that that would show the nature of the business between him and Cover, which Scheffer returned to him. If the paper shown to Scheffer, was the same mentioned by Cover, the statement of Hershey to Scheffer would imply an acceptance of the proposition made by Cover. Yet Hershey, with this paper, or these papers if they are different, in his possession, does not produce them at the trial, nor explain his statement to Scheffer touching the one handed to him, nor does he appear at the trial either to contradict or explain his admissions to Ludden and Scheffer, or furnish his deposition for the purpose, or give any explanation of his omission to do so. Yet the statement of Mr. Cover that Hershey and he never had any arrangement for a general partnership, is manifestly based upon the fact which he believes to be true, that Hershey never accepted his written propositions. It appears that no settlement has been made between Hershey and Cover which would determine the character of their business relations. And the answers of Cover in his examination in chief, "Hershey and I never had any business on joint account, except as to the Folsom logs and the Beaver Brook logs, *that I recollect; * * I do not recollect of dividing profits and losses in any other manner;*" indicate some uncertainty in the mind of the witness upon vital

vol. 15—18

points which may have had weight with the jury. Certainly there are cases in which admissions so well established as those in this case will overcome the positive testimony of witnesses, and where the weight of the testimony is so nearly balanced, when all the circumstances are considered, we do not feel at liberty to disturb the verdict on the ground that it is against the weight of evidence.

The order below is affirmed.